AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means                    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>Apartment 618 at 6240 W Sunset Boulevard, Los Angeles, California 90028 ("SUBJECT PREMISES") | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

2:22-MJ-02682

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

*See Attachment B*

Such affidavit(s) or testimony are incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

☐ Pursuant to <u>18 U.S.C. § 3103a(b)</u>, I find that immediate notification may have an adverse result listed in <u>18 U.S.C. § 2705</u> (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for____days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    _____7/11/22; 4:08pm_____        _John E. McDermott_
                                                          *Judge's signature*

City and state:    _____Los Angeles, CA_____        _Hon. John E. McDermott, U.S. Magistrate Judge_
                                                          *Printed name and title*

AUSA: <u>James Hughes</u>

AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

<u>PREMISES TO BE SEARCHED</u>

Within Apartment 618 of 6240 W Sunset Boulevard, Los Angeles, CA 90028: (I) the common areas of Apartment 618, and (II) SAFFRON's identified living space, specifically, SAFFRON's bedroom and the connected spaces, including but not limited to the closet with the safe (the "SUBJECT PREMISES").

The SUBJECT PREMISES is an apartment within the Wallace on Sunset apartment complex situated between Sunset Boulevard and Leland Way.  The SUBJECT PREMISES is on the south side of the building on the sixth floor, located to the left upon exit of the south elevator.

The door to the apartment has no physical key and instead has a Yale code lock mechanism.  There are no windows on the front of the apartment by the door.

1

**Map of Wallace on Sunset Complex with Apartment 618 highlighted and circled in red**



**Front of Wallace on Sunset Apartment Complex**



**ATTACHMENT B**

**I.    ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1349 (conspiracy to commit wire fraud), § 1343 (wire fraud), § 371 (conspiracy to commit commodity fraud), and § 1503(a) (obstruction of justice) (the "Subject Offenses"), namely:

a.    Application and registration records, documents, programs, applications, or materials relating to the establishment of any financial and/or cryptocurrency related accounts, including, but not limited to, all user profile information and user payment methods such as merchant cards, credit cards, shift card or prepaid card services, merchant card services, and bank account information.

b.    Account identification records, documents, programs, applications, or materials such as name(s) of account holders, email addresses, usernames, mailing or physical addresses, and phone numbers for all account holders or owners and all individuals or entities authorized to access the account as well as, all information related to the funding sources used to establish or fund any account, whether at the time of registration or at any other time.

c.    Correspondence, information, or other records, documents, programs, applications, or materials relating to any communication between SAFFRON and investors, to include (without limitation) notes, letters, email, memoranda, and calendar

1

entries to include, exchange, purchases, or account funding transactions.

d.    Contact information records, documents, programs, applications, or materials for all individuals and entities identified through a "username" or wallet address associated with transactions engaged in during the period above.

e.    Powers of attorney, letters of wishes, corporate minutes, or other legal instruments, records, or documents authorizing any individual or entity to exercise control over an account or any separate account used to remit or receive payments in any currency, virtual or otherwise.

f.    Periodic statements, invoices, records or other documents (or the equivalent) showing dates, amounts, descriptions, bank accounts, and credit card information for all virtual currency transactions.

g.    Financial account history information (on and off-chain) describing the type of transaction (purchase/sale/exchange), statements or other records, documents, programs, applications, materials, the names and wallet addresses of parties involved in a transaction, and the location of the individuals, entities, and merchants involved.

h.    Records, documents, programs, applications, or materials related to creating or reflecting a payment to or from any individual, entity, account, site, or any physical mailing, email, wallet, or website address from an account including, but not limited to checks, wire transfers, electronic transfers, ACH, PayPal, money orders, any transfer of virtual currency

2

assets including virtual currency wallet addresses, or any other form of payment.

       i.   Records, documents, programs, applications, or materials constituting or reflecting any communication between SAFFRON and any individual, entity, account, site, or address identified including, but not limited to, notes, letters, email, memoranda, calendar entries, and call records regarding virtual currency.

       j.   Records, documents, programs, applications, or materials relating to assets, including but not limited to real or personal.

       k.   Records, documents, programs, applications, or materials showing purchases and sales of cryptocurrency, including on any and all exchanges.

       l.   Records, documents, programs, applications, or materials reflecting the ownership of any businesses owned by SAFFRON.

       m.   Records, documents, programs, applications, or materials reflecting personal living expenditures and liabilities of SAFFRON.

       n.   Records, documents, programs, applications, or materials showing the acquisition, disposition, transfer, gift, or sale of any assets such as real property, vehicles, collectibles, jewelry, paw tickets, or any other personal property, to include contract, receipts, invoices, deeds, deeds of trusts, title records, and loan records comprising evidence

of asset acquisition, liabilities, expenditures, and sources of income.

o.    Notes payable and receivable, IOU's, and other recordation of debts.

p.    Any other digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

q.    Information contained in the Telegram App, including the content of communications and identifying information of communications sent and received via those applications.

r.    With respect to any digital devices containing evidence falling within the scope of the foregoing categories of items to be seized:

i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.    evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii.    evidence of the attachment of other devices;

4

iv.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.    records of or information about Internet Protocol addresses used by the device;

ix.   records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

II.   **SEARCH PROCEDURE FOR DIGITAL DEVICES**

3.   The following procedures will be followed at the time of the search in order to avoid unnecessary disclosures of privileged information.

4.    These procedures will be executed by: (a) law enforcement personnel conducting the investigation and search and other individuals assisting law enforcement personnel in the search, including any prosecutor participating in the investigation (the "Search Team") (b) individual(s) not participating in the investigation of the matter, who will be available to assist in the event that a procedure involving potentially privileged information is required (the "Privilege Review Team"); and (c) the Special Matters Unit ("SMU") of the Criminal Division, Fraud Section.  SMU attorneys and support staff are not and will not become part of the prosecution team, and have a separate reporting chain from the prosecution team.

5.    The digital device(s) will be transferred to the SMU. Upon receipt of electronic data such as an email account for a filter review, the SMU will review the digital device(s) for potentially privileged information.

6.    The Search Team will, in their discretion, either copy the digital device(s) on-site or seize and copy the digital device(s), and transport the digital device(s) to an appropriate law enforcement laboratory or similar facility to be copied at that location, or provide the material directly to the SMU.

7.    The SMU, in consultation with the Search Team, will compile a list of "privilege search terms" to be used to electronically search the digital devices, including specific names and generic words intended to identify potentially privileged information.  The SMU will conduct an electronic review of the data on the digital device(s) using the privilege

6

search terms, and by using search protocols specifically chosen to identify and segregate documents or data containing potentially privileged information. All of the data contained in the digital device(s) capable of containing any of the items to be seized may be reviewed using this procedure. Documents or data that are identified by this review as not potentially privileged, including documents that do not contain the privilege search terms, may be released to the Search Team without court intervention. Notwithstanding the procedures set forth in this paragraph, where a Search Team member otherwise reviews documents not previously determined to contain potentially privileged information, and later determines that such documents may be potentially privileged, the documents will then be provided to a Privilege Review Team member and handled in accordance with the procedures described in this paragraph.

8.    Documents or data identified during the initial privilege search terms review to be potentially privileged will be segregated. An SMU attorney may thereafter review the segregated documents to confirm whether or not they contain potentially privileged information. If the SMU attorney determines the documents or data are not potentially privileged, they may be given to the Search Team. If at any point the Search Team identified any data or documents that they believe to be potentially privileged, they will cease the review and refer the materials to the SMU for further review by the SMU. If the SMU attorney determines that documents are potentially privileged, the SMU attorney may do any of the following: (a)

7

apply ex parte to the court for a determination whether or not the documents contain privileged information; (b) defer seeking court intervention and instead segregate the documents in a manner that makes them inaccessible to the Search Team; or (c) disclose the documents to the potential privilege holder, request a privilege log if the potential privilege holder asserts privilege, and seek a ruling from the court regarding the documents if the parties cannot reach agreement.

9. In performing the reviews, both the SMU and the Search Team may search for and attempt to recover:

a. deleted, "hidden," or encrypted data;

b. Records and information indicating the identity and location (both past and present) of the person(s) who use or access the Subject Accounts or who exercise in any way any dominion or control over the accounts, including but not limited to associated email accounts and other internet-based accounts, login Internet Protocol ("IP") addresses, and session times and durations

c. use tools to exclude normal operating system files and standard third-party software that do not need to be searched; and

d. use forensic examination and searching tools, such as Relativity, Cellebrite, EnCase and FTK (Forensic Tool Kit).

10. If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return

8

the digital device and/or delete or destroy all forensic copies
thereof.

11.   If the search determines that a digital device does
contain data falling within the list of items to be seized, the
government may make and retain copies of such data and may
access such data at any time.

12.   If the search determines that a digital device is (a)
itself an item to be seized and/or (b) contains data falling
within the list of other items to be seized, the government may
retain the digital device and any forensic copies of the digital
device but may not access data falling outside the scope of the
other items to be seized absent further court order or written
consent of the property owner.

13.   The Search Team shall complete the search as soon as
is practicable but not to exceed 180 days from the date of
execution of the warrant.  The government will not search the
digital device and/or forensic image thereof beyond this 180-day
period without obtaining an extension of time order from the
Court.

14.   The government may also retain a digital device if the
government, prior to the end of the search period, obtains an
order from the Court authorizing retention of the digital device
(or while an application for such an order is pending),
including in circumstances where the government has not been
able to fully search a digital device because the device or
files contained therein is/are encrypted.

15.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

16.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

17.   In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a.   Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

b.   Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.   Any magnetic, electronic, or optical storage device capable of storing digital data;

d.   Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

10

e.    Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.    Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.    Any passwords, password files, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

18.  The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.